## BARNETT v. CONKLIN.

(Circuit Court of Appeals, Eighth Circuit. July 15, 1920. Rehearing Denied October 25, 1920.)

No. 5509.

1. **Appeal and error ☞71(3)—Denial of injunction against judgment claimed to have been satisfied is appealable.**

An order denying an injunction to restrain plaintiff from taking any proceedings to enforce a judgment, for the reason that it had been satisfied by another defendant, is a final appealable order, though an order refusing to quash an execution for irregularities is one within the discretion of the court, and not appealable.

2. **Judgment ☞888—Satisfaction by release of joint judgment debtor the same in contract and tort actions.**

The rules governing the satisfaction of a joint judgment by settlement and release of one of the joint judgment debtors is the same, whether the action in which the judgment was rendered was one in tort or on contract.

3. **Judgment ☞888—Satisfaction of one joint judgment debtor does not release others, contrary to stipulation.**

The acceptance by a judgment creditor from one judgment debtor of payment of part of the amount of the judgment, and release of that debtor from further liability on the judgment, with stipulation that such release should not affect the liability of the other judgment debtors, does not release the other debtors.

4. **Judgment ☞888—State statute held not applicable to release of joint judgment.**

Rev. St. Mo. 1909, § 5431, as amended by Laws 1915, p. 268, relating to contribution between defendants in judgment for tort and settlement with joint debtors or joint tort-feasors; does not apply to a settlement with one judgment debtor after the judgment has been rendered, with stipulation that it shall not release the other debtors.

*On Petition for Rehearing.*

5. **Judgment ☞526—Character of judgment determined by character of cause of action.**

The character of a judgment as one on contract or for tort may be ascertained by going back of the judgment and examining the character of the cause of action.

6. **Judgment ☞888—Does not cut off statutory right to compromise with one tort-feasor.**

The right under the Missouri statute to compromise with one or more wrongdoers, and to release them from further liability without impairing the right to collect the balance of the claim or cause of action from the other wrongdoers, is not cut off by the recovery of a judgment, but such compromise may be made after judgment as well as before.

Appeal from the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Action by Roland R. Conklin against G. A. Barnett and others. From an order denying defendant Barnett's petition to enjoin plaintiff from taking proceedings to satisfy the judgment rendered therein, defendant Barnett appeals. Affirmed.

J. G. L. Harvey, of Kansas City, Mo. (James A. Reed, of Kansas City, Mo., on the brief), for appellant.

Leslie J. Lyons, of Kansas City, Mo. (Hiram W. Currey, of Joplin, Mo., on the brief), for appellee.

Before HOOK and CARLAND, Circuit Judges, and TRIEBER, District Judge.

CARLAND, Circuit Judge. This is an appeal from an order made by the court below March 22, 1919, denying the petition of appellant, filed January 9, 1919, which prayed that appellee be enjoined from taking any proceedings to' satisfy a judgment rendered by said court on October 3, 1918, for the sum of $167,225.88, in an action wherein appellee was plaintiff and Porto Rico Mining Company, Barnett Mining Company, J. W. Ground, and appellant were defendants. A motion is made to dismiss the appeal, for the reason that the order denying the petition of plaintiff was not a final order and involved the exercise of discretion.

A word in regard to prior proceedings. An appeal was taken to this court from the judgment rendered October 3, 1918, on March 22, 1919. On the argument of said appeal at the September, 1919, term of this court, it was sought by counsel for appellants, against the objection of counsel for appellee, to have the court review the action of the trial court in making the order now sought to be reviewed on this appeal. After the appeal from the judgment had been argued and the case submitted, the present appeal was taken, and a stipulation by counsel was filed in this court, wherein counsel agreed that the court might consider the present appeal in connection with the appeal from the judgment. This court being of the opinion that the order of March 22, 1919, could not be reviewed on the appeal from the judgment alone, and not wishing to take jurisdiction of a case argued before it was appealed, let the present appeal follow the usual course.

[1] The proceeding which resulted in the order appealed from was in no true sense simply a motion to quash an execution involving the exercise of discretion. The proceeding was equivalent and took the place of a proceeding in equity to enjoin the enforcement of the judgment for the reason that it had been satisfied. The prayer of the petition did ask that the execution then outstanding be quashed; but that was merely incidental to the general relief, which was that the enforcement of the judgment should be enjoined. It was not a matter involving the discretion of the trial court, but a matter in regard to which appellant was entitled to the judgment of the court upon the facts pleaded. The denial of the petition by the trial court finally determined, so far as that court was concerned, the rights of appellant, which were substantial rights, not involving the mere regularity of the execution. In so deciding we have no intention to avoid the force and effect of Boyle v. Zacharie, 6 Pet. 648, 8 L. Ed. 532, Evans v. Gee, 14 Pet. 1, 10 L. Ed. 327, Loeber v. Schroeder, 149 U. S. 580, 13 Sup. Ct. 934, 37 L. Ed. 856, and McCargo v. Chapman, 20 How. 555, 15 L. Ed. 1021; or the cases of Noojin v. U. S., 164 Fed. 692, 90

C. C. A. 513, and Carroll et al. v. Davidson, 152 Fed. 424, 81 C. C. A. 566.

Boyle v. Zacharie was a writ of error to revise the decision of the Circuit Court in refusing to quash a writ of venditioni exponas issued for the sale of the ship, General Smith, which was seized upon a fieri facias issued on a judgment against Boyle. Counsel for Boyle made a motion to quash the venditioni exponas, upon the ground, among others, that an appeal had been taken from the judgment, and an injunction and bond given in pursuance thereof, which it was claimed acted as a supersedeas. The provisions of Acts Md. 1799, c. 79, and Acts Md. 1723, c. 8, were also relied upon. It thus appears that the motion to quash merely attacked the regularity of the issuance of the execution and did not attack the integrity in any way of the judgment. It was decided that the denial of the motion to quash was not a final judgment; one of the reasons given being that the same court that issued the injunction, issued the execution, and therefore had control of both writs, and in its discretion could determine which should stand.

In Evans v. Gee a judgment had been rendered against Evans by the Circuit Court at the May term, 1836. No execution, so far as the record showed, had been issued until March 16, 1838, when one was taken out, bearing teste the second Monday of October, 1837, returnable the second Monday of April, 1838. The execution was levied on sundry slaves, and a bond given for their delivery. The bond recited that the execution in virtue of which the levy was made bore teste of the May term, 1836. One of the sons of Thomas Evans made an affidavit stating that his father died on September 12, 1837, and on this affidavit a motion to quash the execution and delivery bond was founded. The motion was refused, but the reason therefor does not appear. The Supreme Court decided that the reason was immaterial, as the refusal to quash the execution was not a final judgment. It therefore appears from the report of this case that the motion to quash was founded upon an irregularity in the issuance of the execution. The point made against the execution was that it was issued against a dead man.

In Loeber v. Schroeder, supra, the Supreme Court said:

"The motion to quash the fi. fa. in this case on the grounds that the order of the Court of Appeals, which directed it to be issued, was void for the reasons assigned, stood upon no better footing than a petition for rehearing would have done, and suggested federal questions for the first time, which, if they existed at all, should have been set up and interposed when the decree of the Court of Appeals was rendered on January 28, 1892."

Of course the ruling on a motion for rehearing or new trial is addressed to the discretion of the court, and not reviewable at all in the federal courts.

In McCargo v. Chapman, supra, a motion to quash an execution issued therein was made upon two grounds:

"(1) Because the same issued more than seven years after a prior execution. (2) Because the same issued more than seven years after the return of the last preceding execution."

It was decided by the Supreme Court in this case that the order quashing the execution was not such a judgment as could be reviewed by writ of error.

Carroll et al. v. Davidson, 152 Fed. 424, 81 C. C. A. 566, was a case in admiralty, where the court denied a motion to set aside a decree previously entered. This, of course, was not a final decision. Noojin v. U. S., supra, simply followed the general rule that a mere motion to quash an execution is not a final judgment.

We have no doubt but that the order in this case was final as to the matters alleged in the petition, and was appealable. The action in which the judgment in favor of appellee was rendered was an action brought by him against appellant and the other defendants for fraud and deceit in the sale of certain mining property situated in Jasper county, Mo. The court, after a trial of the cause, adjudged that the contract of sale should be rescinded, canceled, and set aside. It also adjudged the title of the property to be in the defendants, and rendered a money judgment against them for the amount of money paid for the property in the sum above stated as damages. On the 11th day of March, 1919, the following compromise agreement between J. W. Ground, one of the defendants in the original action, and appellee, was filed in the court below. This agreement, in words and figures following, was the basis upon which appellant rested his prayer for relief in the present proceeding:

"Whereas, Roland R. Conklin, the above-named plaintiff, did on or about October 3, 1918, recover a judgment in the above-entitled cause for $167,225.88, and costs of suit, against the above-named defendants, and each of them; and

"Whereas, J. W. Ground, one of the above-named defendants, desires to settle, compromise, and adjust the above-mentioned judgment, in so far as same affects him, by the payment of a portion thereof; and

"Whereas, Roland R. Conklin, the above-named plaintiff, is willing and has agreed to accept the amount hereinafter mentioned as a partial payment on said judgment:

"Now, therefore, in consideration of the payment by J. W. Ground to Roland R. Conklin of the sum of $25,000 cash in hand, the receipt of which is hereby acknowledged, and the execution and delivery by said J. W. Ground of his promissory note, payable to the order of Roland R. Conklin on or before thirty (30) days after date, with interest at six per cent. (6%) per annum from date, and his two other like promissory notes, for $25,000 each, due and payable on or before six and twelve months, respectively, after date, and each bearing interest at the rate of six per cent. (6%) per annum from date, the payment of the last two mentioned notes to be secured by the assignment and delivery to Roland R. Conklin, as collateral to said notes, of $200,000 par value of the stock of the Joplin-Pittsburg Railway Company, it is agreed as follows:

"First. That said Roland R. Conklin does hereby acknowledge payment by said J. W. Ground of the sum of $100,000 on said judgment, and discharges and releases all lands, tenements, chattels, goods, wares, merchandise, and property of every kind and description now owned by said J. W. Ground, or which may be hereafter acquired by him, from any and all liens and effects of said judgment, and shall not pursue the said J. W. Ground individually or as a stockholder in the Barnett Mining Company or Porto Rico Mining Company further as to the collection of the balance of said judgment, or enforce the payment of said balance out of any property of said J. W. Ground by any

process whatsoever in said cause, or by any supplementary or independent action or proceeding.

"Second. That the said Roland R. Conklin hereby specifically retains and reserves unto himself, his heirs, administrators, executors, or assigns, each, all, and every right, privilege, or remedy given him by law or equity to pursue, enforce, and collect the balance of said judgment against and from the other defendants in said cause, and this compromise, settlement, and agreement shall not be taken, held, or construed in any manner whatsoever as a release or discharge of said other defendants from the force, effect, and lien of said judgment.

"Third. That it is the intention of the parties hereto that said payment of $100,000 made by said J. W. Ground shall constitute a partial payment only on said judgment, and be held, construed, and taken as a mere credit thereon for that amount, and not as a release, discharge, or satisfaction thereof, or of the cause of action upon which said judgment is based, as to said other defendants.

"Fourth. This agreement shall become effective and binding upon the parties hereto on and from the date of the notes above mentioned.

"In witness whereof, the parties have hereunto set their hands, at Joplin, Jasper county, Mo., on the day and date above mentioned."

Upon the facts stated in the agreement and other facts appearing in the record, counsel for appellant contends: (1) That the judgment in favor of appellee in the original action was rendered in an action sounding in tort. (2) That the stipulation above set forth constituted a satisfaction of the judgment as to J. W. Ground. (3) This being so, the judgment was also satisfied as to all of the defendants.

[2] That the judgment was rendered in an action sounding in tort may be conceded, but we are of the opinion that it makes no difference whether it was or not as to the question now under consideration. It also may be conceded that the stipulation constituted a satisfaction of the judgment as to J. W. Ground. At this point we cannot follow counsel for appellant in his contention that the satisfaction of the judgment as to J. W. Ground, in view of the language of the stipulation, constituted a satisfaction of the judgment as to the other defendants. We have stated that in our opinion it is immaterial whether the judgment was rendered in an action sounding in tort or not. Our reasons for so thinking are as follows. We understand the rule at common law as to joint debtors, or joint and several debtors, to be as follows:

"At common law a release of one or two or more joint debtors, or joint and several debtors, releases all, because the debt is entire, and, when once released, can no longer be enforced against any party to it." 34 Cyc. p. 1081, and cases cited.

Again at common law:

"A release given to one of several joint judgment debtors on his paying his proportionate share of the judgment or on other consideration releases the judgment as to all, unless the creditor expressly reserves the right to enforce the judgment as to the others." 23 Cyc. p. 1477.

The judgment rendered in favor of appellee in the original action was joint and several, or at least joint. So far as the common law is concerned, the release of J. W. Ground, without more, would release

the other defendants, regardless of whether it was a judgment rendered in an action sounding in tort or not. After the rendition of the judgment, appellee had no other cause of action than that which might arise upon the judgment. In other words, the cause of action existing before judgment was merged in the judgment.

[3] It remains, therefore, to consider whether the reservations made in the stipulation as to releasing the defendants other than Ground have the effect of holding the balance of the judgment against the other defendants. We have no doubt they do. We are of the opinion that Tillitt v. Mann, 104 Fed. 421, 43 C. C. A. 617, and Carey v. Bilby, 129 Fed. 203, 63 C. C. A. 361, decided by this court, compel us to so hold, even if we had any different opinion than that announced in those cases, which we have not, so far as the point in controversy is concerned. The stipulation, like all other contracts, should be construed according to the intention of the parties to the same. Concerning this intent there can be no doubt, as it is plainly expressed in the stipulation itself. In Berry v. Pullman Co., 249 Fed. 816, 162 C. C. A. 50, L. R. A. 1918F, 358, the Circuit Court of Appeals for the Fifth Circuit followed Carey v. Bilby, supra, giving the same its full approval. See, also, Leschen Co. v. Mayflower Co., 173 Fed. 855, 97 C. C. A. 465, 35 L. R. A. (N. S.) 1, and cases cited; Am. Bonding Co. v. Pueblo Inv. Co., 150 Fed. 17, 80 C. C. A. 97, 9 L. R. A. (N. S.) 557, 10 Ann. Cas. 357, and cases cited; U. S. Fidelity & Guarantee Co. v. Board of Comr's, 145 Fed. 144, 76 C. C. A. 114.

Counsel for appellant cites Dulaney v. Buffum, 173 Mo. 1, 73 S. W. 125, in support of the proposition that the reservation in the stipulation of the right of appellant to pursue the other defendants is void because repugnant to the release given to J. W. Ground. In the case cited the release was given in an action sounding in tort before judgment, and was given so far as two of the defendants in the action were concerned. The court followed the case of Ruble v. Turner, 2 Hen. & M. (Va.) 38. Other cases are cited to the same effect. We are of the opinion, however, that the true rule is stated by this court in Carey v. Bilby, supra, as follows:

"The law favors compromises generally, and it is not perceived that an arrangement of the kind last mentioned should be regarded with disfavor. The release which was read in evidence in the case at bar plainly shows that the sum paid by Hysham was not accepted by the plaintiffs as full compensation for the injury which they had sustained, that it was not in fact full compensation for the injury, and that they had no intention of releasing their cause of action as against Carey. Why, then, should it be given an effect contrary to the intent of the one who executed it? We perceive no adequate reason for giving it such effect, and accordingly agree with the lower court that it did not release Carey."

We are of the opinion that it is not permissible at this date in the progress of the law to construe the stipulation between appellee and J. W. Ground by striking out of it the stipulation that appellee did not intend to release the other defendants, and then, when so emasculated, to decide that it was a release of the other defendants, but that

the whole stipulation must be construed together, and the intent of the parties thus ascertained. In this case the satisfaction that the appellee was entitled to had been definitely ascertained, and beyond question he has not received that satisfaction, and this fact is considered by the courts very important in construing a release, for the purpose of determining whether it was a partial or a complete release of the debt. In cases where a settlement has been had with one tortfeasor before judgment, it is very difficult at times to ascertain what satisfaction the injured party is entitled to, and therefore difficult to ascertain whether he has received that satisfaction or not. It plainly appears in this case, however, that appellee has not received that satisfaction which the law awarded him. We should hesitate to deprive him of the balance of the satisfaction by adding to a harsh rule of the common law a harsh construction of the stipulation.

[4] Certain legislation of the state of Missouri is referred to by counsel for both parties, and a different construction placed upon the same by each. The legislation referred to is as follows:

In 1855 (Rev. St. 1855, c. 51, § 8) the following statute was passed:

"Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract."

This statute simply related to the right of contribution. In 1915 (Laws 1915, p. 268) the statute was amended to read as follows:

"Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract. It shall be lawful for all persons having a claim or cause of action against two or more joint tort-feasors or wrongdoers to compound, settle with, and discharge any and every one or more of said joint tort-feasors or wrongdoers for such sum as such person or persons may see fit, and to release him or them from all further liability to such person or persons for such tort or wrong, without impairing the right of such person or persons to demand and collect the balance of said claim or cause of action from the other joint tort-feasors or wrongdoers against whom such person or persons has such claim or cause of action, and not so released." Section 5431, R. S. 1909.

We are of the opinion the statute is not relevant to the question involved in the present case, except that it shows the intent of the Legislature of Missouri to give persons, having a claim or cause of action against two or more joint tort-feasors or wrongdoers, the right to compound, settle with, and discharge any and every one or more of said joint tort-feasors or wrongdoers for such sum as such person or persons may see fit, and to release him or them from all further liability to such person or persons from such tort or wrong, without impairing the right of such person or persons to demand and collect the balance of said claim or cause of action from the other joint tort-feasors or wrongdoers. This statute, so far as we know, has not been construed by the Supreme Court of Missouri; but we are

of the opinion that it clearly covers two situations: (1) Where the claim or cause of action has been reduced to judgment, in which event there is created the right of contribution which did not exist at common law. (2) Where the claim or cause of action has not been reduced to judgment the statute gives the right above stated. But the present case does not involve either one of these situations. The views herein expressed compel an affirmance of the order appealed from.

Affirmed.

### On Petition for Rehearing.

PER CURIAM. [5] In view of the fact that counsel for petitioner seem to have misunderstood the opinion of the court in this case, we deem it proper, in denying the petition for a rehearing, to say:

First, that we do not hold, as seems to be inferred, that the character of a judgment is not determined by the character of the cause of action. We recognize as well established the rule that, wherever it is necessary to ascertain whether the judgment is for tort or is on contract a court may go back of the judgment itself and examine into the character of the cause of action.

Second, the judgment obtained by Conklin against Barnett and Ground for $167,225.88 was for tort. The written instrument pursuant to which Ground paid or agreed to pay $100,000 for his release from the judgment was not a satisfaction of it. The character of the transaction and the intention of the parties is definitely stated in the third paragraph of the instrument, wherein it is said that the intention is that the payment of $100,000 by Ground "shall constitute a partial payment only on said judgment, and be held, construed, and taken as a mere credit thereon for that amount, and not as a release, discharge, or satisfaction thereof, or of the cause of action upon which said judgment is based, as to said other defendants." What we hold is that the payment by Ground under such circumstances did not release Barnett from his liability for the balance of the judgment for the tort.

[6] Third, that under the statute of Missouri 1915 the same conclusion would necessarily follow. That statute authorizes persons having causes of action against two or more wrongdoers to compromise with one or more, and to release him and them from further liability, without impairing his right to demand and collect the balance of his claim or cause of action from the others. No reason is perceived why that right is cut off by the recovery of a judgment which, as to the amount of the claim, merely makes certain that which was uncertain before. The rule that the character of a judgment is affected by the character of the cause of action is applicable in such a case. Other provisions of the Missouri statute indicate that it was the intention to put judgments as well as causes of action for torts upon the same plane as those on contract.

Petition denied.